(text box: 1)
 NO. 5-99-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

RON KRAMER and JAMES REICHERT, as ) Appeal from the

Shareholders of Mt. Carmel Shelter Care ) Circuit Court of

Facility, Inc., on Behalf of All Other Similarly ) Williamson County.  

Situated Shareholders of Mt. Carmel Shelter )

Care Facility, Inc., )

)

Plaintiffs-Appellees, )

v. ) No. 90-CH-68

)

MT. CARMEL SHELTER CARE FACILITY, )

INC., KIRBY MADDEN, and MADDEN )

FINANCIAL SERVICES, INC., and JAMES )

MORRIS, )

)

Defendants, )

and )

)

JERRY A. ROSS and DOROTHY W. ROSS, ) Honorable

) Ronald R. Eckiss, 

Defendants-Appellants. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

This is the second time this cause has been before us.  The instant case started as a dispute between minority and majority shareholders in a nursing home.  Don Kramer and James Reichert (plaintiffs) are minority shareholders in Mt. Carmel Shelter Care Facility, Inc. (Mt. Carmel), a nursing home incorporated under the laws of Delaware.  Jerry A. Ross and Dorothy W. Ross (defendants) are majority shareholders in Mt. Carmel.  Kirby Madden and Madden Financial Services, Inc., who manage Mt. Carmel, were also defendants, but they take no part in this appeal.  

Originally, plaintiffs brought suit on behalf of the shareholders of Mt. Carmel and for the benefit of Mt. Carmel, alleging a breach of fiduciary duty and a conspiracy to breach fiduciary duty through mismanagement of the corporation.  Plaintiffs claimed that Jerry Ross paid both himself and his wife excessive officers' salaries and directors' fees with respect to Mt. Carmel from March 1979 through the date the original complaint was filed.  Plaintiffs also claimed that Kirby Madden accepted a position as a director of Mt. Carmel and entered into a management contract in order to personally enrich not only himself but also Jerry Ross.  

The facts adduced at the first trial need not be set out again in this appeal.  It is enough to say that after a bench trial, the trial court found that defendants had drawn excessive salaries and directors' fees, and the court ordered defendants to repay the corporation all salaries and directors' fees paid to them from May 24, 1985, to March 26, 1996, totaling $477,361.66, in addition to prejudgment interest calculated at $190,298.73.  The original judgment order was entered on March 26, 1996.  A supplemental judgment order was entered by the trial court on August 28, 1996, in which defendants were ordered to pay plaintiffs' attorney fees totaling $149,880, punitive damages in the amount of $335,000, and costs in the amount of $313, for a total judgment of $1,152,853.39.  Defendants appealed, and plaintiffs cross-appealed.

In the first appeal, defendants argued, 
inter alia
, that the trial court erred in ordering Jerry Ross to forfeit his entire salary.  We agreed, and in an unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23), we reversed that part of the judgment ordering a forfeiture of Jerry Ross's salary paid since May 24, 1985.  
Kramer v. Mt. Carmel Shelter Care Facility, Inc.
, No. 5-96-0665 (May 12, 1998).  We found that Jerry Ross's salary was reasonable compensation in light of his experience and the work he performed.  We also reversed the amount of prejudgment interest awarded, and we remanded for the trial court to recalculate the amount of prejudgment interest owed, taking into account the fact that Jerry Ross's salary was not to be considered in the calculation.  The remainder of the trial court's judgment was affirmed. 

On remand, defendants argued that postjudgment interest ran from the date of the new judgment on remand, while plaintiffs argued that postjudgment interest ran from the dates of the original judgment, March 26, 1996, and August 28, 1996.  The trial court agreed with plaintiffs and ruled that postjudgment interest on the affirmed portions of the judgment was unaffected by our Rule 23 order and that interest continued to accrue from the dates of the original judgment.  On January 27, 1999, the trial court entered a supplemental judgment order that recalculated plaintiffs' award of prejudgment interest at $62,161.09.  Defendants now appeal.

The issue we are asked to address is whether the trial court erred in allowing plaintiffs to recover postjudgment interest from the dates of the original judgment.  Defendants contend that a judgment is indivisible and that when it is necessary to enter a new or a modified judgment on remand, postjudgment interest runs from the date of the judgment on remand.  In their brief, defendants also alleged that postjudgment interest should not have accrued during the pendency of the first appeal since plaintiffs cross-appealed and sought to increase the amount of the judgment; however, in their reply brief, defendants acknowledge that plaintiffs' cross-appeal does not bar the accrual of postjudgment interest during the appeal (see 
Pinkstaff v. Pennsylvania R.R. Co.
, 31 Ill. 2d 518, 202 N.E.2d 512 (1964)), and they withdraw that argument.  However, defendants insist that the rule is that if a judgment is modified or reversed in part on appeal and the cause is remanded for a recalculation of the judgment, postjudgment interest on the amount does not begin to run until the date of the entry of the final judgment on remand.  We disagree.

Section 2-1303 of the Code of Civil Procedure (the Code) provides in pertinent part as follows:

"Interest on judgment.  Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***.  When judgment is entered upon any award, report[,] or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment.  Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time.  The judgment debtor may[,] by tender of payment of the judgment, costs[,] and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal[] or other steps to reverse, vacate[,] or modify the judgment."  735 ILCS 5/2-1303 (West 1996).

It is well-accepted that filing an appeal does not toll the accrual of statutory interest.  
Pinkstaff v. Pennsylvania R.R. Co.
, 31 Ill. 2d 518, 202 N.E.2d 512 (1964).  However, the question in the instant case is whether our determination in the first case to reverse that portion of the trial court's judgment which ordered a forfeiture of Jerry Ross's salary and to remand for a recalculation of prejudgment interest prohibits the accrual of statutory interest.  Because all judgment amounts upon which postjudgment interest accrued remained definite and certain upon remand, we find that interest continued to accrue.

As litigation becomes more complex and prolonged, delineating the specific date from which to measure the accrual of interest on a judgment that has been partially or totally set aside or modified on appeal becomes more problematic.  Each case must be determined on its own unique facts.  In order to arrive at a specific date from which to measure the accrual of interest, it is necessary to scrutinize the events leading up to the appeal.  See 
Thatch v. Missouri Pacific R.R. Co.
, 69 Ill. App. 3d 48, 51-52, 386 N.E.2d 1180, 1181-82 (1979).  An award of interest on a money judgment requires that the amount of money owed is certain and that the judgment debtor enjoyed the improper use of the money during the period for which interest is to be awarded.  
Robinson v. Robinson
, 140 Ill. App. 3d 610, 611, 488 N.E.2d 1349, 1351 (1986).  

Here, it is important to note that the first appeal culminated in most of the judgment being affirmed.  The forfeiture of Dorothy Ross's salary, the forfeiture of directors' fees paid to Dorothy and Jerry Ross since May 24, 1985, the award of attorney fees and costs, and the award of punitive damages were all affirmed.  Only that portion of the judgment ordering the forfeiture of Jerry Ross's salary paid since May 24, 1985, was reversed, along with a corresponding recalculation of prejudgment interest.  Despite this court's reversal and remand, we believe that the judgment amounts upon which postjudgment interest accrued remained definite and certain.  Defendants' argument that they did not know the specific amount to tender to stop the accrual of postjudgment interest until after the supplemental judgment order upon remand is unconvincing.  Defendants could have tendered full payment of the judgment, interests, and costs to stop the further accrual of interest following this court's prior decision.  The calculations were relatively easy to make.  The judgment was merely reduced by the amount of Jerry Ross's salary, which we found to be reasonable, and a corresponding amount of prejudgment interest.

Policy considerations underlying the accrual of postjudgment interest support our conclusion.  The rationale behind section 2-1303 of the Code is to make the judgment creditor whole by requiring the judgment debtor to give up the use of the money, thereby allowing the judgment creditor to use the funds to earn interest if he chooses to do so while the matter is pending.  
Halloran v. Dickerson
, 287 Ill. App. 3d 857, 865, 679 N.E.2d 774, 780 (1997).  It is simply not fair to allow the judgment debtor to continue to use the money that is rightfully the plaintiffs'.  In the instant case, defendants had wrongfully taken nearly $500,000 in salaries and fees and had the use and the benefit of the misappropriated funds for nearly 10 years.  Jerry Ross's conduct was found to be malicious and vindictive.  The extent of defendants' liability was settled, and our remand was nothing more than a simple recalculation.  Under these circumstances, we find that the trial court did not err in allowing plaintiffs to recover postjudgment interest from the dates of the original judgment.

Defendants cite several cases in support of their proposition that interest failed to accrue until after the judgment on remand, including, 
inter alia
, 
Rosenbaum v. Rosenbaum
, 94 Ill. App. 3d 352, 418 N.E.2d 939 (1981), 
Presbyterian Distribution Service v. Chicago National Bank
, 36 Ill. App. 2d 1, 183 N.E.2d 525 (1962), and 
Thatch v. Missouri Pacific R.R. Co.
, 69 Ill. App. 3d 48, 386 N.E.2d 1180 (1979).  However, none of these cases is controlling here.

For example, in 
Rosenbaum
, the original judgment was entered on September 6, 1977, and directed Mrs. Rosenbaum to pay one-half of her husband's attorney fees in the partition action.  94 Ill. App. 3d at 356, 418 N.E.2d at 942.  On appeal, the order was reversed and the cause was remanded.  On remand, the trial court ordered Mr. Rosenbaum to pay Mrs. Rosenbaum.  Mrs. Rosenbaum argued that she was entitled to interest from September 6, 1977, rather than December 26, 1979, the date when the trial court directed the repayment of her recalculated share of the partition proceeds.  
Rosenbaum
, 94 Ill. App. 3d at 356, 418 N.E.2d at 942.  The 
Rosenbaum
 court disagreed with Mrs. Rosenbaum, due to the fact that the exact amount owed was not calculated until the disposition of the case following the remand, and held that interest on the judgment should run from the date of the second decree, December 26, 1979.  94 Ill. App. 3d at 356, 418 N.E.2d at 943.  A contrary holding would have been unreasonable in light of the fact that Mr. Rosenbaum was initially the judgment creditor.  Mr. Rosenbaum could not tender the amount of the judgment until he became the judgment debtor after the first appeal.  However, in the instant case, defendants remained the judgment debtors throughout the litigation.

Likewise, 
Presbyterian Distribution Service
 is distinguishable from the case at bar.  That case was before the appellate court for the third time and involved the right of a tenant to terminate a lease with his landlord pursuant to an untenantability clause.  
Presbyterian Distribution Service
, 36 Ill. App. 2d at 2, 183 N.E.2d at 525-26.  The reviewing court remanded the cause with directions to the trial court to enter damages in accordance with its directions.  At the time the cause was remanded, damages were undetermined.  The 
Presbyterian Distribution Service
 court held that since the exact amount of damages was undetermined until the trial court disposed of the case on remand, statutory interest did not run until the date of the amended decree.  36 Ill. App. 2d at 6, 183 N.E.2d at 525.  In the instant case, liability was clearly established, most of the judgment was affirmed, and the cause was remanded for a simple recalculation that defendants could have made on their own.

Thatch
, a Fifth District case, is also distinguishable from the instant case.  In that case, the jury awarded the plaintiff $249,200, and the trial court entered a judgment thereon.  On appeal, the reviewing court ruled that the jury should have been allowed to consider the plaintiff's contributory negligence.  Therefore, a new trial was held on the issue of damages, and a verdict was returned awarding the plaintiff $236,740.  
Thatch
, 69 Ill. App. 3d at 50, 386 N.E.2d at 1181.  The trial court granted the plaintiff interest on this sum from the time of the original verdict.  The 
Thatch
 court disagreed, stating that since the exact amount of damages was not known at the time of the original verdict, it would be inequitable to compel the defendant to pay interest from that time.  "The exact amount of damages was not known until the trial court submitted the issue of contributory negligence to the jury."  
Thatch
, 69 Ill. App. 3d at 52, 386 N.E.2d at 1182.  The 
Thatch
 court further noted that it would have been unwise for the defendant to tender payment of the original award, knowing that such payment would probably be in excess of the final award, that the plaintiff would have had the use of money rightfully belonging to the defendant, and that the defendant would then have had to collect the excess payment from the plaintiff.  
Thatch
, 69 Ill. App. 3d at 52, 386 N.E.2d at 1182.  

The instant case is distinguishable from 
Thatch
 because here there was no possibility for increased liability on remand.  The exact amount of damages was easily calculated.  No uncertainty was created by this court's reversal of that portion of the trial court's order forfeiting Jerry Ross's salary, nor was any uncertainty created by remanding the cause for a recalculation of prejudgment interest.  We find that the instant case is more akin to 
Phelps v. O'Malley
, 187 Ill. App. 3d 150, 543 N.E.2d 311 (1989).

In 
Phelps
, the defendant first appealed from a judgment against him in a breach-of-contract action in the amount of $387,500.  On appeal, the reviewing court affirmed the defendant's liability but instructed the trial court to reduce the judgment to $379,000, reflecting the evidence at the trial of the actual sales prices.  The trial court followed the reviewing court's mandate and entered a judgment for the plaintiff for $379,000, effective from the date of the original judgment, with postjudgment interest to accrue from the date of the original judgment.  
Phelps
, 187 Ill. App. 3d at 151-52, 543 N.E.2d at 312.  The defendant appealed the award of interest measured from the date of the original judgment, relying on the same cases–
Phelps, Rosenbaum, Presbyterian Distribution Service, 
and 
Thatch
–relied on by defendants herein.  
Phelps
, 187 Ill. App. 3d at 156-57, 543 N.E.2d at 315-16.  The 
Phelps
 court found those cases distinguishable because the mandate by the 
Phelps
 court in the first appeal specifically provided the amount the plaintiff should recover as $379,000, thus giving the defendant the opportunity to halt statutory interest by tendering that amount.  
Phelps
, 187 Ill. App. 3d at 157, 543 N.E.2d at 316.  The 
Phelps
 court went on to differentiate between those cases in which an appeal results in an increase in the award and those cases in which an appeal results in a decrease in the award.  Specifically, the 
Phelps
 court noted that when an award is increased, a defendant cannot halt the accrual of interest until after remand because by tendering the lower amount, the defendant would not pay the judgment  in full.  Nothing less than a full, formal tender in compliance with the statute operates to stop the accrual of interest on a judgment.  However, where a judgment debtor realizes a reduction of liability after an appeal, the judgment debtor can halt the total accrual of interest by initially paying the greater amount of the original judgment.  
Phelps
, 187 Ill. App. 3d at 158, 543 N.E.2d at 316-17.

Likewise in the instant case, defendants were not facing the possibility of an increased judgment amount on remand.  Most of the judgment was affirmed, but a remand was necessary in order to reduce the judgment amount in a specific manner.  This court found that Jerry Ross's salary over a 10-year period was reasonable, and we ordered the judgment reduced by that amount, as well as a corresponding reduction in prejudgment interest.  Defendants, therefore, could have halted the accrual of interest by paying the greater amount of the original judgment.  In the alternative, a simple recalculation would have determined the lower amount actually owed.  Defendants needed only to reduce the original judgment amount by Jerry Ross's salary, recalculate interest, and tender such amount in order to stop the accrual of interest and avoid further litigation.  To hold otherwise would be to allow defendants, the judgment debtors, to enjoy the improper use of the money during the period of time interest was accruing. 

We have reviewed all the arguments and cases cited by defendants, but we are unconvinced that postjudgment interest should run from the date of the judgment on remand.  Each case must be decided on its own unique facts, and the facts here support the trial court's determination.  We agree with the trial court that plaintiffs are entitled to interest from the date of the original judgment.  

For the foregoing reasons, the judgment of the circuit court of Williamson County is hereby affirmed.

Affirmed.

HOPKINS and KUEHN, JJ., concur.

NO. 5-99-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

RON KRAMER and JAMES REICHERT, as ) Appeal from the

Shareholders of Mt. Carmel Shelter Care ) Circuit Court of

Facility, Inc., on Behalf of All Other Similarly ) Williamson County.  

Situated Shareholders of Mt. Carmel Shelter )

Care Facility, Inc., )

)

Plaintiffs-Appellees, )

v. ) No. 90-CH-68

)

MT. CARMEL SHELTER CARE FACILITY, )

INC., KIRBY MADDEN, and MADDEN )

FINANCIAL SERVICES, INC., and JAMES )

MORRIS, )

)

Defendants, )

and )

)

JERRY A. ROSS and DOROTHY W. ROSS, ) Honorable

) Ronald R. Eckiss, 

Defendants-Appellants. ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: May 30, 2001

___________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Terrence J. Hopkins, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________

Attorney
 Edward J. Kionka, P. O. Box 10, Carbondale, IL  62903

for
 

Appellants
 

___________________________________________________________________________

Attorneys
 Terry Sharp, Law Offices of Terry Sharp, 1115 Harrison, P. O. 

for
 Box 906, Mt. Vernon, IL  62864; David M. Harris, Lisa A. Nielsen,

Appellees
 Greensfelder, Hemker & Gale, P.C., 10 South Broadway, Suite 2000,

St. Louis, MO  63102-1774

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 05/30/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.