FIRST DIVISION

November 21, 2005

No. 1-04-3393

HENRY SCHULTZ, 

Plaintiff-Appellee, 

v.

LAKEWOOD ELECTRIC CORPORATION, 

Defendant-Appellant,

and

(Osman Construction Corporation,

Defendant). 

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Richard R. Berland, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

This case is before us for a second time.  On March 9, 2004, we reversed the circuit court's order granting defendant Lakewood Electric Corporation (Lakewood) a new trial and ordered the trial court to enter judgment on the jury verdict in favor of plaintiff Henry Schultz.  
Schultz v. Lakewood Electric Corp.
, No. 1-03-0395 (March 9, 2004) (unpublished order under Supreme Court Rule 23).  Lakewood now appeals from an order of the circuit court entering statutory interest on the judgment at the rate of 9% pursuant to section 2-1303 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1303 (West 2004)).  On appeal, Lakewood contends that section 2-1303 is unconstitutional because it violates due process and equal protection of the law.  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On January 26, 1998, plaintiff was injured as a result of coming into contact with a live 277-volt wire while working as an electrician for construction of a Carmax, located in Tinley Park, Illinois.  The general contractor for the project was Osman Construction Corporation (Osman).  Osman employed Lakewood as the prime electrical contractor.  In turn, Lakewood employed Advanced Systems Technology (Advanced) as a subcontractor on the project to perform low voltage electrical work.  Plaintiff was employed by Advanced.

On May 13, plaintiff filed a complaint against Osman and Lakewood, alleging negligence.  Thereafter, Lakewood and Osman filed a third-party complaint against Advanced.  Prior to a trial, plaintiff entered into a settlement agreement with Osman for $17,500.  The matter then proceeded to trial in July 2002 against Lakewood only.  The jury returned a verdict in favor of plaintiff against Lakewood in the amount of $1,110,400 and in favor of Lakewood against Advanced.  The jury apportioned fault as follows: plaintiff 20%; Lakewood 75%; and Advanced 5%.  On August 3, the trial court entered judgment on the jury's verdict, awarding plaintiff $870,820 against Lakewood after the setoff for Osman's settlement and the amount representing plaintiff's comparative negligence.

Thereafter, Lakewood filed a posttrial motion, asking the court to vacate the judgment entered against it and sustain its previously made, but reserved for ruling, motion for a mistrial or, in the alternative, grant it a new trial or enter judgment notwithstanding the verdict.  On February 26, 2003, the trial court granted Lakewood's motion for a new trial.  Plaintiff filed a notice of appeal from this order and, as noted above, we reversed the trial court's order granting a new trial and remanded this cause, ordering the trial court to enter judgment in favor of plaintiff on the jury verdict. 

On April 26, 2004, Lakewood tendered a draft to plaintiff in the amount of $870,820.  Thereafter, on May 21, it tendered another draft to plaintiff in the amount of $14,171.80, the amount of statutory interest it believed would accrue upon reentry of judgment.  On July 9, the case was reinstated in the circuit court.  On July 13, plaintiff filed a motion for costs in the amount of $9,555.31.  On July 27, Lakewood filed a motion to strike certain costs, although admitting it owed $585.40.  On August 12, plaintiff filed his reply in support of his motion for costs and, on August 13, he filed a motion for entry of judgment on the jury verdict and for computation of statutory interest.  Plaintiff sought interest from the date of the jury verdict.

On September 14, Lakewood filed its response to plaintiff's motion for entry of judgment and interest, alleging that interest should begin to accrue from the date the circuit court reenters judgment on the jury verdict, not from the date of the original jury verdict.  Thereafter, Lakewood filed its notice of claim of unconstitutionality of section 2-1303 as violative of due process and equal protection.  

On October 27, the trial court held a hearing on plaintiff's motion for interest.  At this time, the trial court indicated that it did not agree with Lakewood's argument that the interest statute was unconstitutional and noted that the rate of interest was up to the legislature to set.  The court further indicated that interest accrued from the date of the original jury verdict.  Accordingly, the trial court entered an order entering judgment on the jury verdict in favor of plaintiff for $870,820.  The order further provided that interest began to run as of August 3, 2002, and that, to date, the amount of interest was $126,297.39, which would continue to accrue at the rate of $30.40 per day until Lakewood paid the entire amount.  The court also awarded plaintiff $675.40 in costs.  This appeal followed.

ANALYSIS

Lakewood asks this court to declare section 2-1303 of the Code unconstitutional as violative of due process and equal protection under Article I, sections 2 (due process and equal protection clauses) and 12 (access to courts clause) of the Illinois Constitution and the fourteenth amendment (due process and equal protection clauses) to the United States Constitution.  According to Lakewood, the 9% rate has been in effect since 1980 and, because times have changed, there is no longer any reasonable objective in having an inflexible rate of interest.

Section 2-1303 of the Code provides:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government ***.  The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment."  735 ILCS 5/2-1303 (West 2004).

In addressing a challenge to the constitutionality of a statute, we begin with the presumption that it is constitutional.  
In re D.W.
, 214 Ill. 2d 289, 310, 827 N.E.2d 466 (2005).  If reasonably possible, a reviewing court must construe the statute so as to uphold its constitutionality and validity.  
In re D.W.
, 214 Ill. 2d at 310.  The party challenging the constitutionality of a statute bears the burden of demonstrating its invalidity.  
People v. Malchow
, 193 Ill. 2d 413, 418, 739 N.E.2d 433 (2000).  Whether a statute is constitutional presents a question of law that we review 
de novo
.  
In re D.W.
, 214 Ill. 2d at 309.  When a statute is challenged as unconstitutional under substantive due process or equal protection, our analysis is essentially the same. 

I.  Due Process

Under substantive due process, if the statute does not affect a fundamental constitutional right, the rational basis test applies to determine whether the statute comports with due process.  
People v. Cornelius
, 213 Ill. 2d 178, 203, 821 N.E.2d 288 (2004).  "The rational basis test is satisfied where the challenged statute bears a rational relationship to the purpose the legislature  intended to achieve in enacting the statute."  
Cornelius
, 213 Ill. 2d at 203-04.  Under the rational basis test, we give high deference to the judgments made by the legislature.  
Village of Lake Villa v. Stokovich
, 211 Ill. 2d 106, 125, 810 N.E.2d 13 (2004).  "Thus, we are not concerned with the wisdom of the statute or with whether it is the best means to achieve the desired result."  
Village of Lake Villa
, 211 Ill. 2d at 125-26.  "So long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld."  
Village of Lake Villa
, 
211 Ill. 2d at 126.  Conversely, "where the right infringed upon is among those rights considered 'fundamental' constitutional rights, the challenged statute is subject to strict scrutiny analysis."  
Cornelius
, 213 Ill. 2d at 204.  "To survive strict scrutiny, the means employed by the legislature must be necessary to achieve a compelling state interest, and the statute must be narrowly tailored to accomplish this goal, 
i.e.
, the legislature must employ the least restrictive means consistent with the attainment of the intended goal."  
Cornelius
, 213 Ill. 2d at 204. 

Lakewood contends that section 2-1303 of the Code violates substantive due process because it contravenes the right of access to the courts under section 12 of the Illinois Constitution and the fourteenth amendment since the fixed 9% interest rate is arbitrary and has no relationship to present economic conditions and penalizes it for appealing, thus hampering its access to the courts.  According to Lakewood, it was either required to tender the entire judgment amount to plaintiff, who was no longer a judgment creditor since the trial court awarded Lakewood a new trial, or abandon its appeal rights.  Although Lakewood notes that either a strict scrutiny or rational basis test applies to due process challenges, it does not present any cohesive, reasoned, or well-developed argument as to which standard applies here.  Lakewood maintains that the purpose of section 2-1303 is to make a plaintiff whole and, as applied here, the provision is unconstitutional since current economic factors do not warrant a 9% rate of interest because it gives plaintiffs a bonus or windfall beyond the yield most sophisticated investors receive on their investments.  Lakewood further maintains that the statutory rate is an arbitrary taking of property without a hearing because there was no examination of the relationship between the amount awarded as interest and the amount necessary to make plaintiff whole.

Plaintiff contends that Lakewood has not demonstrated that its claim is subject to strict scrutiny and, under the rational basis test, section 2-1303 withstands constitutional analysis.  According to plaintiff, Lakewood has not demonstrated that access to the courts under section 12 is a fundamental right and, has not even shown, how this right is hampered by section 2-1303 since section 12 relates to filing fees, costs, 
etc.
  Moreover, plaintiff argues that Lakewood does not, by promptly paying the judgment, forfeit its right to contest the validity of the judgment and, if it were to win on appeal, it would be entitled to reimbursement from plaintiff.  Specifically, plaintiff maintains that Lakewood's responsibility for interest has no relation to whether it chooses to appeal and, therefore, it is unclear how the imposition of interest penalizes it for asserting its appeal rights. 

Lakewood's challenge here is an as applied challenge.  With respect to Lakewood's procedural due process challenge, that section 2-1303 violates due process because there was no hearing on the relationship between the amount of interest and what is necessary to make plaintiff whole, we decline to address this.  "Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived."  
Obert v. Saville
, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928 (1993).  We are entitled to have the issues clearly defined with citation to pertinent authority.  
Obert
, 253 Ill. App. 3d at 682.  Lakewood's argument is conclusory, without argument, and without citation to authority.  Accordingly, Lakewood has waived this challenge for review.

Additionally, with respect to Lakewood's challenge that the statutory scheme should employ a flexible interest rate, not a fixed rate, based on current market conditions, we find this is a matter for the legislature, not this court.  This policy consideration, based on changing trends or the market, is not a basis upon which we should find section 2-1303 unconstitutional.  
In re Parentage of John M.
, 212 Ill. 2d 253, 272, 817 N.E.2d 500 (2004).  Lakewood simply disagrees with the wisdom of the current statutory scheme.  "[W]here objections 'pose what are essentially questions of policy[,] [they] are more appropriately directed to the legislature than to this court.' [Citation.]" 
In re Parentage of John M.
, 212 Ill. 2d at 272.  "When assessing the constitutionality of a statute ' "we do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare." ' [Citations.]" 
In re Parentage of John M.
, 212 Ill. 2d at 272-73.  See 
Boddie v. Connecticut
, 401 U.S. 371, 394, 28 L. Ed. 2d 113, 129, 91 S. Ct. 780, 794  (1971) (Black, J., dissenting) (stating that neither the due process nor equal protection clauses "justifies judges in trying to make our Constitution fit the times").  See also 
Eskay Plastics, Ltd. v. Chappell
, 34 Wash. App. 210, 213, 660 P. 2d 764, 766 (1983) (noting that, although the plaintiffs' argument that the public would better be served by a higher postjudgment interest rate (current rate was 10% and had been since 1899) may be true, this was a matter for the legislature, not the court, since the "role of the court does not include a duty to review the wisdom of otherwise lawful legislative acts").

With respect to Lakewood's core argument, that section 2-1303  violates due process because it hampers its access to the appellate review process, as plaintiff argues, it is questionable whether the imposition of statutory interest even falls within the rationale underlying the access to court principles of either section 12 or federal constitutional due process law.  Section 12 provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.  He shall obtain justice by law, freely, completely, and promptly."  Ill. Const. 1970, art. I, §12.  Section 12 relates to costs, fees, and charges for 
access
 to the court system.  See 
Rose v. Pucinski
, 321 Ill. App. 3d 92, 94, 746 N.E.2d 800 (2001)
 
(compulsory fee required upon filing of lawsuit to fund mandatory arbitration program); 
Mellon v. Coffelt
, 313 Ill. App. 3d 619, 624, 730 N.E.2d 102 (2000) (same); 
Zamarron v. Pucinski
, 282 Ill. App. 3d 354, 359-60, 668 N.E.2d 186 (1996) (increased court filing fees and surcharge for court automation).  See also 
Lee v. Pucinski
, 267 Ill. App. 3d 489, 494-95, 642 N.E.2d 769 (1994) (reproduction fees charged by the circuit court for copies of documents "are not filing fees that are required before a litigant can gain access to the courts" and they "do not cause a chilling effect on those who may want to file a lawsuit" and, thus, they do not violate section 12 or due process).

Lakewood relies on 
Boddie 
in support of its argument that access to the courts cannot be hampered under the fourteenth amendment.  This case does not support Lakewood, but, rather, goes against it.  In 
Boddie
, the plaintiffs were welfare recipients who wished to obtain divorces, but were not able to afford the filing costs and fees charged by the court for institution of the suit.  They challenged the fees and costs, including process service costs, as unconstitutional since they restricted the plaintiffs’ access to the court.  
Boddie
, 401 U.S. at 372, 28 L. Ed. 2d at 115, 91 S. Ct. at 783.  The Court, in addressing the issue before it, noted that just as a denial of notice or an opportunity to be heard may violate due process, "so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party’s opportunity to be heard."  
Boddie
, 401 U.S. at 380, 28 L. Ed. 2d at 120, 91 S. Ct. at 787.  The 
Boddie
 Court concluded that 

"the State’s refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State’s action, a denial of due process."  
Boddie
, 401 U.S. at 380-81, 28 L. Ed. 2d at 120-21, 91 S. Ct. at 787. 

The Court then detailed the state's justification for the fees, "the prevention of frivolous litigation," which it found to be a substantial interest.  
Boddie
, 401 U.S. at 381, 28 L. Ed. 2d at 121, 91 S. Ct. at 788.  However, the Court determined that the state's interest was not sufficient to override the plaintiffs' right of "having access to the only avenue open" for dissolution of their marriages.  
Boddie
, 401 U.S. at 381, 28 L. Ed. 2d at 121, 91 S. Ct. at 788.  Specifically, the 
Boddie
 Court found that the application of the statute at issue "operate[d] to cut off entirely access to the courts."  
Boddie
, 401 U.S. at 382, 28 L. Ed. 2d at 121, 91 S. Ct. at 788.   With respect to its holding, the Court stated:

"[W]e wish to re-emphasize that we go no further than necessary to dispose of the case before us ***.  We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship."  
Boddie
, 401 U.S. at 382-83, 28 L. Ed. 2d at 122, 91 S. Ct. at 788.

Clearly, based upon the above cases, the focus of access to the courts, either under section 12 or due process, are fees for 
access
 to the courts, 
i.e.
, those required to file or maintain a lawsuit in order to vindicate one's rights.  As in 
Lee
, the alleged "fee" here, statutory interest, is not a cost or charge required for access to the courts, nor was Lakewood required to pay this "fee" in order to maintain an appeal.  Similarly, Lakewood was not required to pay the "fee" as in 
Boddie
 or be foreclosed from its opportunity to be heard in the appellate court.  More specifically, the "fee" did not operate to "cut off entirely access to the courts."  
Boddie
, 401 U.S. at 382, 28 L. Ed. 2d at 121, 91 S. Ct. at 788.  As the 
Rose
 court stated: "The United States Supreme Court has invalidated only state fees that have made it impossible for litigants seeking to vindicate fundamental rights to utilize the court system."  
Rose
, 321 Ill. App. 3d at 102.  Clearly, statutory interest is not the type of fee contemplated to fall under the penumbra of section 12, nor due process principles.  As such, the underlying basis for Lakewood's challenge appears to be lacking.

In any event, we find Lakewood's challenge to section 2-1303 as violative of due process unpersuasive.  Lakewood apparently maintains that section 12 creates a fundamental right to appellate review, which cannot be hampered in any manner and that by requiring it to either pay the full amount of the judgment awarded to plaintiff (whom it states was not entitled to the money) or appeal and, if it loses, pay statutory interest, denies it due process.  

As has been repeatedly stated, section 12 does not create a constitutional right to a certain remedy, or mandate that a certain remedy be provided in any specific form; rather, it merely expresses a general statement of philosophy.  
Unzicker v. Kraft Food Ingredients Corp.
, 203 Ill. 2d 64, 83, 783 N.E.2d 1024 (2002); 
Segers v. Industrial Comm'n
, 191 Ill. 2d 421, 435, 732 N.E.2d 488 (2000); 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 458-59, 689 N.E.2d 1057 (1997); 
DeLuna v. St. Elizabeth's Hospital
, 147 Ill. 2d 57, 75, 588 N.E.2d 1139 (1992).  Stated differently, section 12 "traditionally has been construed as a goal as opposed to a requirement of a specific remedy."  
Healy v. Owens-Illinois, Inc.
, 359 Ill. App. 3d 186, 197, 833 N.E.2d 906 (2005).  This section "only requires there be some remedy for an alleged wrong."  
Martinez v. Department of Public Aid
, 348 Ill. App. 3d 788, 794, 810 N.E.2d 608 (2004).  Accordingly, it has been held that section 12 does not create fundamental rights in the interests listed in that provision.  
Gavery v. Lake County, 
160 Ill. App. 3d 761, 767, 513 N.E.2d 1127 (1987).  "The free access clause protects litigants from the imposition of unreasonable fees that interfere with their right to a remedy in the law or impede with the due administration of justice."  
Rose
, 
321 Ill. App. 3d at 99.  Similarly, it has been held that federal due process is violated only if a person is deprived of all existing remedies to enforce an existing right.  
Brinkerhoff Faris Trust & Savings Co. v. Hill
, 281 U.S. 673, 682, 74 L. Ed. 1107, 1114, 50 S. Ct. 451, 454-55 (1930).

Lakewood cites 
Cotting v. Godard
, 183 U.S. 79, 46 L. Ed 92, 22 S. Ct. 30 (1901), in support of its position that access to the courts is a fundamental due process right.  
Cotting
 does not support Lakewood's argument.  First, 
Cotting
 does not address any question with respect to the adequacy of access to the courts, nor does it interpret anything else with respect to access.  Moreover, 
Cotting
 involved an equal protection challenge, not a due process challenge, and, in this regard, the Court made the following general statement: " 'The 14
th
 Amendment *** undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty, *** but that 
equal protection
 and security should be given 
to all under like circumstances
 [including] *** that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs ***.'  [Citation.]"  (Emphasis added.)  
Cotting
, 183 U.S. at 106, 46 L. Ed. at 107, 22 S. Ct. at 41.  Clearly, this statement does not define what necessary access to the courts must entail, nor that the alleged access in the instant case is a fundamental right.  We do not find this case controlling on the question of whether Lakewood’s access to appellate review is a fundamental right under section 12.

More instructive is 
Gavery
, which clearly held that the interests identified in section 12 are not fundamental rights.  Moreover, none of the cases since 
Gavery
 interpreting section 12 or addressing the constitutionality of a certain provision under that section have held that strict scrutiny applies.  The cases have utilized the rational basis test.  See, 
e.g.
, 
Rose
, 321 Ill. App. 3d at 102-03; 
Mellon
, 313 Ill. App. 3d at 624-25; 
Zamarron
, 282 Ill. App. 3d at 359-60.  Accordingly, we find that Lakewood’s challenge is not subject to the strict scrutiny test; rather, the rational basis test applies.

Thus, we must determine whether section 2-1303 bears a rational relationship to the purpose sought to be achieved by the legislature in enacting the provision.  Lakewood states that the purpose of section 2-1303 is to make a plaintiff whole.  We note that there is no legislative pronouncement as to the purpose of section 2-1303, nor any history on the purpose.  Only appellate court decisions have detailed what they believe to be the purpose sought to be achieved by the legislature in enacting section 2-1303.  In this regard, courts have stated that the rationale behind section 2-1303 is to make the judgment creditor whole by requiring the judgment debtor to give up the use of the money, thereby allowing the judgment creditor to use the funds to earn interest while the underlying matter is pending on appeal.  
Kramer v. Mount Carmel Shelter Care Facility
, 322 Ill. App. 3d 389, 393, 750 N.E.2d 757 (2001).  Stated differently, the money is paid to make the plaintiff whole because prior to payment he is denied access to funds that were owed to him.  
Overlin v. Windmere Cove Partners, Inc.
, 325 Ill. App. 3d 75, 78, 756 N.E.2d 926 (2001).  More specifically, section 2-1303 is aimed at fully compensating a party when his money has been wrongfully withheld.  
McKenzie Dredging Co. v. Deneen River Co.
, 249 Ill. App. 3d 694, 698, 619 N.E.2d 188 (1993).  Absent direct legislative intent on the purpose of section 2-1303, we will presume these are the purposes underlying this section.

Lakewood has cited no case, either from Illinois or elsewhere, that has held that a postjudgment statutory interest rate violates due process.  However, our independent research has disclosed one such case to the contrary.  In 
Zintek v. Perchik
, 163 Wis. 2d 439, 471 N.W.2d 522 (App. Ct. 1991), the defendants challenged the award of postjudgment interest to the plaintiff at the rate of 12% on the grounds that it was "unfair, usurious and in violation of substantive due process."  
Zintek
, 163 Wis. 2d at 477, 471 N.W.2d at 537.  Specifically, the defendants argued that the rate was usurious "because prevailing market rates of return on investments [were] currently well below 12%, thus effectively causing the statutory rate to operate as overcompensation to [the plaintiff] and as a penalty against the [defendants]."  
Zintek
, 163 Wis. 2d at 478, 471 N.W.2d at 537.  More specifically, the defendants argued that "the legislature's choice of 12% as the rate of interest on verdicts is 'arbitrary and unreasonable' because it 'bears no rational relationship to the interest a plaintiff might actually earn on a judgment, and it is contrary to [the compensatory] purpose" of the act.  
Zintek
, 163 Wis. 2d at 478, 471 N.W.2d at 537.  The 
Zintek
 court disagreed, noting that "[i]t does not necessarily follow that the only 'rational' interest rate is one which is in virtual lock-step with every fluctuation in market conditions."  
Zintek
, 163 Wis. 2d at 479, 471 N.W.2d at 538.  The 
Zintek
 court noted that the purpose justifying an award of interest "is to compensate  plaintiff for the forbearance of the income-producing ability of the money due."  
Zintek
, 163 Wis. 2d at 479, 471 N.W.2d at 538.  According to the court, the "award of interest on the verdict in this case clearly serves this purpose."  
Zintek
, 163 Wis. 2d at 479, 471 N.W.2d at 538.  The court further noted that the accumulation of interest may also serve to motivate the debtor to pay and that this "is not punishment," but "incentive."  
Zintek
, 163 Wis. 2d at 479, 471 N.W.2d at 538.  The court concluded that a "non-usurious interest rate above the prevailing market rate is a rational means of providing such an incentive."  
Zintek
, 163 Wis. 2d at 479, 471 N.W.2d at 538.  Accordingly, the court held that the provision affording postjudgment interest did not violate due process.

Lakewood's arguments are essentially the same as those in 
Zintek
, 
i.e.
, there is no rational relationship between the 9% interest rate because it overcompensates plaintiff and penalizes Lakewood.  We find Lakewood's argument, as in 
Zintek
, unpersuasive.  As plaintiff points out, the legislature, when it enacted the 9% interest rate, clearly was aware that market rates change (this apparently was the basis for its change in 1980).  However, the legislature enacted a fixed rate.  Simply because market conditions have changed today and may bear a lesser rate of return does not mean that the 9% rate does not serve the purpose of compensating a plaintiff for the lack of use of funds owed to it.  Clearly, an award of interest serves what is deemed as the legislative purpose in enacting the statute.  We also find that the imposition of interest does not penalize Lakewood for appealing.  Clearly, Lakewood could have paid the judgment to plaintiff and avoided interest entirely.  Although Lakewood argues that if it did do so, plaintiff could have dissipated the money and, in the event Lakewood was ultimately successful, there would be nothing to return to it, we do not find this argument convincing.  While Lakewood's argument may be true, again, this is a policy consideration for the legislature and is not a basis upon which we can find section 12 unconstitutional.  Accordingly, we find that section 2-1303 does not violate due process as it bears a rational relationship to the purpose sought to be achieved by the legislature.

II.  Equal Protection

With respect to plaintiff's equal protection argument, the rules stated above are similar and well settled, 
i.e.
,

"[i]n conducting an equal protection analysis, we apply the same standards under both the United States Constitution and the Illinois Constitution. [Citation.]  The guarantee of equal protection requires the government to treat similarly situated individuals in a similar fashion. [Citation.]  It does not prevent the government from drawing distinctions between different categories of people in enacting legislation, but it does prohibit the government from doing so on the basis of criteria wholly unrelated to the legislation's purpose. [Citation.]  Where legislation does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate level of scrutiny is the rational basis test. [Citation.]  Under the rational basis test, a court's review of a classification is limited and deferential. [Citation.]   The court simply inquires whether the means the statute employs to achieve its purpose are rationally related to that purpose. [Citation.]  If any set of facts can reasonably be conceived to justify the classification, it will not be construed as violating the equal protection guarantee. [Citation.]"  
Wauconda Fire Protection District v. Stonewall Orchards, LLP
, 214 Ill. 2d 417, 434, 828 N.E.2d 216 (2005).

Lakewood contends that the entire scheme of section 2-1303 violates equal protection of both the federal and state constitutions because the provision creates disparate treatment between judgment debtors and (1) judgment creditors and (2) all other parties to civil litigation.  Again, Lakewood sets forth the two relevant tests, but fails to argue which one applies.  Lakewood maintains, assuming 9% is an appropriate interest rate, that it discriminates against judgment debtors.  Specifically, Lakewood argues that if it had paid plaintiff the judgment amount, plaintiff would not be required to post any security, plaintiff could dissipate the money and, assuming the money was still in existence, if plaintiff were required to repay the money to it, plaintiff would not be required to pay Lakewood interest.  Because of this, Lakewood maintains that section 2-1310 does not protect judgment creditors and judgment debtors equally.  Lakewood also maintains that section 2-1303 treats judgment debtors differently than other parties to civil litigation where a money judgment is not involved, 
i.e.
, declaratory actions, because these parties are not required to pay interest. 

The rational basis test applies to Lakewood's equal protection challenge.  
Robles v. Chicago Transit Authority
, 235 Ill. App. 3d 121, 142, 601 N.E.2d 869 (1992) ("rational basis test applies in determining the constitutionality [of section 2-1303] of the classification since neither a fundamental right nor a suspect class is involved").  Thus, the question is whether section 2-1303 places similarly situated persons into different classifications for reasons wholly unrelated to the purpose of the legislation.  We find that it does not.  First, Lakewood has not demonstrated how the two categories it relies upon are similarly situated to it.  With respect to judgment creditors, they are not similarly situated to judgment debtors.  There has been no judgment entered against a judgment creditor, implicating section 2-1303.   If Lakewood meant to refer to plaintiffs, as it appears to since it argues that, if it paid plaintiff the amount of the judgment and it ultimately won, plaintiff would not have to repay the money to it with interest, this argument is unpersuasive.  From a plain reading of the statute, section 2-1303 would, in Lakewood's hypothetical situation, apply to plaintiff.  Specifically, if Lakewood had paid plaintiff the $870,820 judgment at the time it was originally entered, appealed and was successful, and a new trial resulted in a verdict in favor of it, and plaintiff's subsequent appeal was unsuccessful (all assumptions), then ultimately a judgment would be entered against plaintiff in favor of Lakewood, which necessarily would require plaintiff to return the $870,820 to Lakewood.  At this time, plaintiff would become the judgment debtor and section 2-1303 would be invoked.  Accordingly, plaintiff would be liable to Lakewood for interest on the $870,820 until it paid the amount in full.  Section 2-1303 does not use the terms plaintiff and defendant; rather, it utilizes the term judgment debtor.  As such, Lakewood's argument that plaintiff would not be required to pay interest appears to be erroneous.  Accordingly, we find that section 2-1303 does not treat Lakewood differently than it treats plaintiff, assuming the scenario Lakewood proposes occurred.

With respect to other nonmonetary judgment debtors, Lakewood has offered no argument as to how or why such parties are similarly situated to monetary judgment debtors, like itself.  Again, we are "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented" and we are not a "repository in to which an appellant may foist the burden of argument and research."  
Obert
, 253 Ill. App. 3d at 682.  Because Lakewood has not provided any argument on this question, we find it waived. 

Based on the foregoing, we find that section 2-1303 does not violate equal protection of law.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.