# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black; padding:1em;">

### *Department of Transportation v. GreatBanc Trust Co.*,
### 2020 IL App (1st) 171393

</div>

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF TRANSPORTATION, for and on Behalf of the People of the State of Illinois, Plaintiff-Appellant, v. GREATBANC TRUST COMPANY, Formerly Known as First National Bank in Chicago Heights, as Trustee Under Trust Agreement Dated October 8, 1973, and Known as Trust Number 996; THE BENEFICIARY OR BENEFICIARIES of a Trust Agreement Dated October 8, 1973, and Known as Trust Number 996, With GreatBanc Trust Company, Formerly Known as First National Bank in Chicago Heights, as Trustee, Whose Names Are Unknown and Are Designated Unknown Owners; GREATBANC TRUST COMPANY, Formerly Known as First National Bank in Chicago Heights, as Trustee Under a Trust Agreement Dated December 4, 1970, and Known as Trust Number 1447; THE BENEFICIARY OR BENEFICIARIES of a Trust Agreement, Dated December 4, 1970, and Known as Trust Number 1447, With GreatBanc Trust Company, Formerly Known as First National Bank in Chicago Heights, as Trustee, Whose Names Are Unknown and Are Designated Unknown Owners; PETER KATTOS; MARQUETTE BANK a/k/a MARQUETTE; and UNKNOWN OWNERS, Defendants (Neal & Leroy, LLC, Appellee).–THE DEPARTMENT OF TRANSPORTATION, for and on Behalf of the People of the State of Illinois, Plaintiff-Appellee and Cross-Appellant, v. GREATBANC TRUST COMPANY, Formerly Known as First National Bank in Chicago Heights, as Trustee Under Trust Agreement Dated October 8, 1973, and Known as Trust Number 996; THE BENEFICIARY OR BENEFICIARIES of a Trust Agreement Dated October 8, 1973, and Known as Trust Number 996, With GreatBanc Trust Company, Formerly Known as First National Bank in Chicago Heights, as Trustee, Whose Names Are Unknown and Are Designated Unknown Owners; GREATBANC TRUST COMPANY, Formerly Known as First National Bank in Chicago Heights, as Trustee Under a Trust Agreement Dated December 4, 1970, and Known as Trust Number 1447; THE BENEFICIARY OR BENEFICIARIES of a Trust Agreement, Dated December 4, 1970, and Known as Trust Number 1447, With GreatBanc Trust Company, Formerly Known as First |

National Bank in Chicago Heights, as Trustee, Whose Names Are Unknown and Are Designated Unknown Owners; PETER KATTOS; MARQUETTE BANK a/k/a MARQUETTE; and UNKNOWN OWNERS, Defendants (Peter Kattos, Defendant-Appellant and Cross-Appellee).

| | |
|---|---|
| District & No. | First District, Second Division<br>Nos. 1-17-1393, 1-18-2310 cons. |
| Filed | March 10, 2020 |
| Decision Under<br>Review | Appeal from the Circuit Court of Cook County, No. 06-L-050813; the Hon. Alexander P. White and the Hon. Thomas More Donnelly, Judges, presiding. |
| Judgment | No. 1-17-1393, Affirmed.<br>No. 1-18-2310, Affirmed in part, reversed in part, and remanded. |
| Counsel on<br>Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Amanda Ripp, Special Assistant Attorney General, of Walker Wilcox Matousek, LLP, of counsel), for appellant Department of Transportation.<br><br>Carl A. Gigante and Rebecca Kaiser Fournier, of Figliulo & Silverman, PC, of Chicago, for appellee Peter Kattos.<br><br>Langdon D. Neal and Nicole Castillo, of Neal & Leroy, LLC, of Chicago, for appellee Neal & Leroy, LLC. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment and opinion. |

**OPINION**

¶ 1     In the consolidated appeals from this eminent domain matter, the parties' disputes center around a series of orders entered by the trial court on the withdrawal and subsequent refund of preliminary compensation funds deposited by plaintiff, the Illinois Department of Transportation (IDOT), pursuant to section 20-5-15 of the Eminent Domain Act (Act) (735 ILCS 30/20-5-15 (West 2006)). In appeal No. 1-17-1393, IDOT argues that the trial court erred in (1) permitting Neal & Leroy, LLC (N&L), defendant Peter Kattos's former counsel, to withdraw preliminary compensation funds; (2) not requiring N&L to participate in the refund of excess preliminary compensation funds; and (3) not permitting IDOT to conduct discovery or file a written response to N&L's petition to vacate. In appeal No. 1-18-2310, Kattos argues that the trial court erred in awarding IDOT prejudgment interest on the preliminary compensation refund prior to a determination of the precise amounts owed by each of the refunding parties. In its cross-appeal in No. 1-18-2310, IDOT argues that the trial court incorrectly held that a pending appeal deprived it of jurisdiction to determine who was responsible for refunding the portion of preliminary compensation funds received by N&L. For the reasons that follow, we affirm in appeal No. 1-17-1393. In appeal No. 1-18-2310, we affirm in part, reverse in part, and remand in Kattos's appeal and determine that IDOT's cross-appeal is moot.

¶ 2                          I. BACKGROUND

¶ 3     In August 2006, IDOT filed a complaint to condemn a portion of real property located at the intersection of U.S. Route 6 and U.S. Route 45 in Orland Park, in which the named defendants had either an ownership or beneficial interest (subject property), for use in a road improvement project. The record is not clear on the precise relationship of the named defendants to the subject property. Although not specifically stated anywhere, it appears, based on information gathered in the record and from statements in the parties' appellate briefs, that the two trusts for which GreatBanc Trust Company (GreatBanc) is the trustee were the record owners of the two parcels that comprised the subject property. The beneficiaries of those trusts were Ashton Drive, LLC (Ashton), and Petey's Two Real Estate, LLC (Petey's), both owned in part by Kattos but neither named as defendants.

¶ 4     In September 2006, pursuant to quick-take proceedings[1] instituted by IDOT, the trial court set the preliminary just compensation for the subject property at $3,202,000, which IDOT deposited with the Cook County Treasurer the following month. Thereafter, in January 2007, Kattos, GreatBanc, Ashton, and Petey's filed a verified petition to withdraw the preliminary compensation (petition to withdraw). In their petition to withdraw, Kattos, GreatBanc, Ashton, and Petey's sought to withdraw the full amount of the deposited preliminary compensation. In support, they represented that they and defendant Marquette Bank (Marquette), who held a mortgage on a portion of the subject property, were the only parties who had any interest in

---

[1]"Quick-take is a proceeding within an eminent domain proceeding, whereby title and possession to property is placed in the State prior to a final determination of just compensation. [Citation.] It is a means to prevent delays to public projects and to protect the rights of a landowner, by allowing the issue of compensation to be litigated at a later date." *Department of Transportation v. Anderson*, 384 Ill. App. 3d 309, 314 (2008).

the subject property and that, should the trial court later determine that a refund of any portion of the withdrawn preliminary compensation is necessary, they would be responsible for refunding any amount exceeding the determination of just compensation. They asked that the trial court enter an order directing the disbursement of the preliminary compensation funds according to a letter of direction, which would include disbursement to Marquette to pay off the mortgage, payment to N&L for attorney fees and costs, and payments to Ashton and Petey's.

¶ 5 In response, IDOT did not object to the actual withdrawal of the preliminary compensation funds, but instead objected to the withdrawal of the preliminary compensation funds in the absence of an order specifying the identities of all of the fund recipients and the precise amounts they were to receive. IDOT also argued that the withdrawal order needed to specify that the withdrawal of the funds was conditioned on the refund of any excess funds following the determination of just compensation and that some preliminary compensation funds should be held back to ensure the demolition of a building on the subject property. In addition, IDOT questioned in a footnote of its written response whether N&L was an "interested party" under the Act. IDOT argued that if N&L was an "interested party," then it was also subject to the refund provisions of the Act. IDOT did not, however, argue that N&L was precluded from receiving any of the funds because it was not an "interested party."

¶ 6 Following a hearing on the matter, the trial court granted the petition to withdraw the funds. Without specifying precise amounts, the trial court directed that the county treasurer disburse the preliminary compensation funds to a number of entities, including Marquette to pay off the outstanding mortgage on the subject property and N&L for attorney fees and costs, pursuant to a letter of direction to follow. The order also stated that any withdrawing party would be required to refund any amount that exceeded the final just compensation determination. Of the $3,202,000 in preliminary compensation, $3,102,000 was ultimately distributed—Marquette received $319,054.26, N&L received $284,067.95, Ashton received $1,313,069.42, and Petey's received $1,185,808.37. The remaining $100,000 of the preliminary compensation was left on deposit with the county treasurer as security for the demolition holdback, as requested by IDOT.

¶ 7 On April 27, 2017, the trial court entered a final judgment order, setting the final just compensation for the subject property at $1,520,000. In that order, the trial court also directed that within 30 days, Marquette, N&L, Ashton, and Petey's refund their *pro rata* share of $1,582,000, the amount the withdrawn preliminary compensation funds exceeded the final just compensation.[2]

¶ 8 Shortly thereafter, N&L, which no longer represented Kattos, Ashton, or Petey's, filed a petition for leave to file a limited appearance for the purpose of contesting the trial court's jurisdiction over N&L. The trial court granted N&L leave to file its limited appearance, after which N&L filed a petition to vacate the final judgment order as void with respect to N&L (petition to vacate). In the petition to vacate, N&L argued that the final judgment order was void as to N&L because the trial court lacked jurisdiction over N&L since N&L was not a party to the case and did not receive proper notice of the entry of the judgment. N&L also

_____

[2] $3,202,000 (total preliminary compensation deposited) - $100,000 (demolition hold back) - $1,520,000 (final just compensation) = $1,582,000 (excess preliminary compensation distributed).

argued that no motion had been filed asking for judgment against N&L and that the trial court entered the final judgment order prior to the date originally set for its entry.

¶ 9 On May 17, 2017, the trial court held a hearing on the petition to vacate. During that hearing, counsel for Kattos indicated that he intended to file a notice of appeal from the April 27, 2017, final judgment order. N&L expressed concern that the filing of Kattos's notice of appeal would divest the trial court of jurisdiction to review the issue of whether the final judgment order was void as to N&L and suggested that granting the petition to vacate would preserve Kattos's right to appeal without causing prejudice to any of the parties. IDOT objected to the notion that it was necessary to vacate the final judgment order as to N&L in order to allow Kattos to proceed with his appeal. IDOT also requested the opportunity to respond to N&L's petition to vacate before the trial court ruled on it.

¶ 10 Concerned that Kattos's right to appeal might be jeopardized, the trial court agreed to vacate the final judgment order as to N&L so as to allow Kattos's appeal to proceed. The trial court reasoned that this would preserve Kattos's right to appeal, would not jeopardize N&L's or IDOT's position on the issue of whether N&L should participate in the refund of excess preliminary compensation funds, and would allow the appellate court to provide guidance on how the trial court should proceed. Later in the hearing, the trial court stated that it was also granting the petition to vacate on the basis that N&L was not a party to the action. The trial court denied IDOT's request to file a response, stating that it found N&L to not be a party to the case, and thus, a written response from IDOT was unnecessary. The written order granting N&L's petition to vacate was entered on May 17, 2017, and stated that N&L's petition to vacate was granted over IDOT's objection on the basis that N&L was not a party to the proceedings. Accordingly, the final judgment order was vacated as to N&L.

¶ 11 Thereafter, IDOT instituted appeal No. 1-17-1393. IDOT's notice of appeal indicated that IDOT was appealing from the final judgment order of April 27, 2017, and the order of May 17, 2017, granting N&L's petition to vacate the final judgment order as to N&L and denying IDOT leave to file a response to the petition to vacate.

¶ 12 In June 2017, IDOT filed a motion for entry of judgment against Marquette and against Ashton and Petey's as beneficiaries of the GreatBanc trusts. IDOT alleged that Marquette, Ashton, and Petey's had failed to refund their *pro rata* share of the excess preliminary compensation funds, and thus, IDOT, pursuant to section 20-5-35 of the Act (735 ILCS 30/20-5-35 (West 2016)), was entitled to a judgment against them in the amounts of their respective *pro rata* shares of the excess preliminary compensation funds, plus interest. In its response, Marquette argued that it should not be subject to participating in the refund of the excess preliminary compensation because Kattos, Ashton, Petey's, and GreatBanc sought the withdrawal of the preliminary compensation funds, not Marquette, and because Marquette was only paid preliminary compensation funds at the direction of Kattos, Ashton, Petey's, and GreatBanc.

¶ 13 In October 2017, following a hearing on the matter, the trial court entered an order granting IDOT's motion for judgment. Because Marquette was listed on the withdrawal order and received preliminary compensation funds, the trial court concluded that it was subject to participating in the refund of the excess preliminary compensation funds. Accordingly, the trial court held that IDOT was entitled to judgment against Marquette, Ashton, and Petey's in amounts proportionate to the amounts they each received in preliminary compensation funds.

The trial court continued the matter for an evidentiary hearing to determine the precise amounts of the judgments to be entered.

¶ 14 Prior to the evidentiary hearing, the parties submitted briefs regarding the appropriate amount of the judgments and the application of interest. Kattos argued that the trial court was divested of jurisdiction to make a determination of responsibility for refunding the preliminary compensation funds received by N&L because of IDOT's pending appeal from the final judgment order and the order granting N&L's petition to vacate. Kattos also argued that interest on the refund amounts had not yet started to accrue and that Ashton and Petey's could not jointly and severally be liable for the refund amounts. Finally, Kattos argued that Marquette was entitled to the funds it received and that Ashton and Petey's should be responsible for the refund portion attributable to the funds received by Marquette.

¶ 15 Marquette argued that it should not be required to refund any of the preliminary compensation funds it received because it had a lien on the subject property that took priority over the owners' interest in the subject property and it did not receive any funds in excess of what it was owed on the mortgage. According to Marquette, if it was required to refund its portion of the preliminary compensation funds, it would be left in the position of being owed money on the subject property without having a mortgage to secure the lien. Marquette also noted that Ashton and Petey's agreed, at the time of withdrawal, to be responsible for any refund of excess funds.

¶ 16 On September 26, 2018, the trial court entered two orders. In the first order, the trial court found that the amount of just compensation due to Marquette was $319,054.26. Because the amount of preliminary compensation funds that Marquette received did not exceed $319,054.26, the trial court concluded that Marquette did not have to participate in the refund of excess funds to IDOT. In the second order entered that day, the trial court held that interest began accruing on the excess preliminary compensation funds upon the entry of the final judgment order on April 27, 2017, and that Ashton and Petey's were jointly and severally liable for the amount of the refund. The trial court took under advisement the issue of allocating N&L's share of the refund.

¶ 17 One month later, on October 24, 2018, the trial court issued a memorandum opinion and order. In it, the trial court concluded that it lacked jurisdiction over N&L and its *pro rata* share of the refund due to IDOT's pending appeal. Accordingly, it made no determination as to N&L's share of the excess preliminary compensation funds and instead entered judgment against Ashton and Petey's in the amount of $1,297,932.05, their share of the excess preliminary compensation funds, plus their share of interest, which the trial court calculated at $174,127.41. The trial court also ordered that the judgment would continue to accrue interest at the rate of 9% per annum until paid, in accordance with section 2-1303 of the Code of Civil Procedure (735 ILCS 5/2-1303 (West 2006)).

¶ 18 Thereafter, Kattos instituted appeal No. 1-18-2310, in which he contests the trial court's determination that IDOT was entitled to interest starting on April 27, 2017. IDOT filed a cross-appeal, this time challenging the trial court's determination that it lacked jurisdiction to make any determinations regarding the allocation of N&L's portion of the refund.

¶ 19                                    II. ANALYSIS

¶ 20 In appeal No. 1-17-1393, IDOT argues that the trial court erred in (1) permitting N&L to withdraw preliminary compensation funds, (2) not requiring N&L to participate in the refund

of excess preliminary compensation funds, and (3) not permitting IDOT to conduct discovery or file a written response to N&L's petition to vacate. In appeal No. 1-18-2310, Kattos argues that the trial court erred in awarding IDOT prejudgment interest on the preliminary compensation refund prior to a determination of the precise amounts owed by each of the refunding parties. In its cross-appeal in No. 1-18-2310, IDOT argues that the trial court incorrectly held that a pending appeal deprived it of jurisdiction to determine who was responsible for refunding the portion of preliminary compensation funds received by N&L. We address each of these in turn.

¶ 21                                    A. Appeal No. 1-17-1393
¶ 22                                        1. Jurisdiction
¶ 23    Before addressing the merits of IDOT's contentions, we must first address N&L's argument that we lack jurisdiction over IDOT's appeal. With respect to IDOT's contentions of error in the order granting the petition to withdraw, N&L argues that because the order granting the petition to withdraw was not final and IDOT did not obtain a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), we lack jurisdiction to review it. N&L also argues that we lack jurisdiction over this issue because IDOT did not mention it or the January 18, 2007, order granting the petition to withdraw in its notice of appeal. In addition, N&L argues that we lack jurisdiction to review IDOT's contention that the trial court erred in vacating the final judgment order as to N&L because once the final judgment order was vacated as to N&L, the merits of the claim remained pending against N&L and an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding was required. N&L's contentions are without merit.

¶ 24    We agree—and IDOT does not dispute—that the order granting the petition to withdraw was not a final order because it did not dispose of the parties' rights on some separate and definite part of the controversy (*State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009)); rather, the order simply permitted the conditional withdrawal of preliminary compensation funds, but left open the final determination of the actual compensation due to the property owners. N&L believes, however, that because the order granting the petition to withdraw was not final, a Rule 304(a) finding was required. This is not the case. Rule 304(a) is a mechanism by which a party may appeal a final order that does not resolve all claims against all parties (*id.*); it does not, as N&L seems to believe, make an otherwise nonfinal order final (*MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 25). Any Rule 304(a) finding entered with respect to the January 18, 2007, order would have no effect on the finality of the order and would not solve the jurisdictional defect N&L claims exists. Thus, the existence or nonexistence of a Rule 304(a) finding in the January 18, 2007, order is not fatal to our jurisdiction because such a finding is completely irrelevant in this context.

¶ 25    The fact that the January 18, 2007, order was not final at the time that it was entered also does not preclude us from exercising jurisdiction because the January 18, 2007, withdrawal order was a step in producing the final judgment order and thus became reviewable once the trial court entered the final judgment order on April 27, 2017, which set the final just compensation for the subject property. See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 288-89 (1993) (judgment on jury's verdict on final compensation and ordering refund of excess preliminary compensation funds withdrawn was final and appealable order); *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979)

- 7 -

(an appeal from a final judgment draws into question all non-final orders that produced the judgment). For the same reason, IDOT's failure to specifically include the January 18, 2007, order in the notice of appeal is not fatal to our jurisdiction. See *Burtell*, 76 Ill. 2d at 435 (orders unspecified in notices of appeal are reviewable if they are a step in the procedural progression leading to the specified judgment).

¶ 26    As far as N&L's claim that we lack jurisdiction to review IDOT's contention that the trial court erred in vacating the final judgment order as to N&L, we also find it to be without merit. According to N&L, we lack jurisdiction to review the trial court's grant of the petition to vacate because the result of that order was to leave the refund claim against N&L pending, thus necessitating a Rule 304(a) finding. The final judgment order of April 27, 2017, contained a Rule 304(a) finding, but N&L argues that the finding in that order does not cover the May 17, 2017, order granting the petition to vacate because the final judgment order, having been vacated as to N&L, essentially does not exist with respect to N&L. We disagree.

¶ 27    The final judgment order, as originally entered, provided that N&L, Marquette, Ashton, and Petey's were each to refund their *pro rata* share of the excess preliminary compensation funds. N&L then filed its petition to vacate directed against the final judgment order, which the trial court granted on the basis that N&L was not a party to the action. By removing N&L from the final judgment order on N&L's postjudgment motion, the trial court essentially modified the final judgment order to require only Marquette, Ashton, and Petey's to share in the refund of the excess preliminary compensation funds. Although IDOT frames its argument in terms of the order granting the petition to vacate being error, IDOT's contention, at its core, is that the trial court erred in not requiring N&L to participate in the refund of the excess preliminary compensation funds, a result that springs from the modified final judgment order. Following the resolution of N&L's postjudgment motion, the final judgment order became final and appealable. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) (providing that the time for filing a notice of appeal is tolled until the resolution of the last pending postjudgment motion). To the extent that there were other matters that remained pending, the Rule 304(a) finding in the final judgment order was sufficient to permit IDOT's appeal. See *Waters v. Reingold*, 278 Ill. App. 3d 647, 652 n.5 (1996), *overruled on other grounds sub nom. Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 8 (1998) ("[W]here the judgment order contains a Rule 304(a) finding, the mere filing of a post-trial motion against that judgment will not invalidate that prior Rule 304(a) finding or necessitate a second Rule 304(a) finding in the order disposing of the post-trial motion.")

¶ 28    In sum, we conclude that N&L's contentions directed against our jurisdiction over appeal No. 1-17-1393 are without merit and that we do, in fact, have jurisdiction to review IDOT's contentions in this appeal.

¶ 29                          2. N&L's Receipt of Funds and Participation in Refund

¶ 30    Turning to the merits of IDOT's contentions in this appeal, IDOT's primary arguments are that the trial court erred in allowing N&L to withdraw preliminary compensation funds and in not requiring N&L to participate in the refund of the excess preliminary compensation funds. Because our resolutions of these issues are somewhat intertwined, we address them together.

¶ 31    With respect to IDOT's contention that the trial court erred in allowing N&L to withdraw preliminary compensation funds because N&L was not a party to the proceedings with an interest in the subject property, we conclude that IDOT has waived this contention for failing

to timely raise it in the trial court. Although the petition to withdraw identified N&L as one of the proposed recipients of preliminary compensation funds, in its response to the petition to withdraw, IDOT failed to raise any argument that N&L should not be allowed to receive any of the funds because it was not a party with an interest in the subject property. Even the footnote in IDOT's response that questioned whether N&L was an interested party did so in the context of whether N&L would be subject to the refund provisions of the Act, not whether N&L was precluded from receiving any of the preliminary compensation funds. We also observe that IDOT has failed to include a transcript from the hearing on the petition to withdraw, making it impossible for us to determine whether IDOT raised this contention during the hearing or to conduct a meaningful review of IDOT's claim. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). Accordingly, because there is nothing in the record demonstrating that IDOT raised this issue in the trial court, we must conclude that IDOT has waived it on appeal. *Schanowitz v. State Farm Mutual Automobile Insurance Co.*, 299 Ill. App. 3d 843, 848 (1998) ("It is well settled that an appellant who fails to raise an issue in the trial court waives the issue on appeal.").

¶ 32    Even putting waiver aside, we conclude that the trial court did not err in allowing N&L to receive preliminary compensation funds and emphasize that although N&L did *receive* some of the preliminary compensation funds, it did not *withdraw* them; rather, Kattos, GreatBanc, Ashton, and Petey's did. We recognize that it is unlikely that the trial court based its decisions on this reasoning, given the fact that the trial court vacated the final judgment order as to N&L on the basis that N&L was not a party to the case and, years later, rejected Marquette's contention that it was not subject to the refund provisions of the Act because it was not the withdrawing party. Regardless of whether the trial court relied on this basis in its rulings—or even whether the trial court would agree with our conclusion—we are free to affirm on any basis supported by the record, regardless of the trial court's reasoning. See *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734 (2009) ("[W]e may affirm the judgment of the trial court on any basis in the record, regardless of whether the trial court relied upon that basis or whether the trial court's reasoning was correct."). For the reasons that follow, our review of the record leads us to conclude that N&L did not itself withdraw preliminary compensation funds, but instead was paid attorney fees from preliminary compensation funds withdrawn by Kattos, GreatBanc, Ashton, and Petey's. In turn, because it was Kattos, GreatBanc, Ashton, and Petey's that withdrew the preliminary compensation funds, the trial court did not err in not requiring N&L to participate in the refund of the excess preliminary compensation funds.

¶ 33    In quick-take proceedings, to permit the petitioner to take immediate title to the subject property, the trial court is required to set an amount of preliminary compensation that the condemning party is required to deposit with the county treasurer. 735 ILCS 30/20-5-10, 20-5-15 (West 2006). Once IDOT deposited the preliminary compensation with the county treasurer in this case, the Act provides that "any party interested in the property may apply to the court for authority to withdraw, for his or her own use, his or her share (or any part thereof) of the amount preliminarily found by the court to be just compensation and deposited by the

plaintiff." *Id.* § 20-5-20. If the trial court authorizes the withdrawal of preliminary compensation funds, it must do so

> "upon the condition that the party making the withdrawal shall refund to the clerk of the court, upon the entry of a proper court order, any portion of the amount withdrawn that exceeds the amount finally ascertained in the proceeding to be just compensation (or damages, costs, expenses, or attorney fees) owing to that party." *Id.*

The Act further provides:

> "If the amount withdrawn from deposit by any interested party under the provision of Section 20-5-20 of this Act exceeds the amount finally adjudged to be just compensation (or damages, costs, expenses, and attorney fees) due to that party, the court shall order that party to refund the excess to the clerk of the court and, if refund is not made within a reasonable time fixed by the court, shall enter judgment for the excess in favor of the plaintiff and against that party." *Id.* § 20-5-35.

¶ 34   We think it clear—and the parties do not dispute—that only those parties with an interest in the subject property are permitted to make withdrawals on the preliminary compensation funds. See *id.* § 20-5-20 (providing that "any party interested in the property" may petition for withdrawal of preliminary compensation funds). The parties also agree that N&L does not have an interest in the subject property. IDOT contends that this means that the trial court erred in permitting N&L to withdraw preliminary compensation funds, but N&L argues that it did not withdraw funds, Kattos, GreatBanc, Ashton, and Petey's did. As stated above, we conclude that the record supports N&L's position.

¶ 35   The record indicates that the petition to withdraw was filed by Kattos, GreatBanc, Ashton, and Petey's, not N&L in its personal capacity. In the petition to withdraw, Kattos, GreatBanc, Ashton, and Petey's specifically stated that *they* sought to withdraw the entire amount of the preliminary compensation funds and that they, with Marquette, were the only parties who had an interest in the subject property. According to the petition to withdraw, all the statements and representations contained in it were made for the purpose of inducing the county treasurer to "pay *to the Defendants* [defined as Kattos, GreatBanc, Ashton, and Petey's] the money it holds as the preliminary just compensation award in the above cited lawsuit." (Emphasis added.) In addition, in the petition to withdraw, Kattos, GreatBanc, Ashton, and Petey's promised as follows:

> "In the event that a proper Court Order is entered herein at a later time requiring a refund to the Clerk of the Court of all or any portion of this amount so withdrawn, the Defendants [defined, again, as Kattos, GreatBanc, Ashton, and Petey's] herein will refund any amount so ordered which exceeds that amount finally ascertained in the proceeding to be just compensation or otherwise owing to the defendant fee owner."

In closing, Kattos, GreatBanc, Ashton, and Petey's requested that the trial court enter an order directing that the county treasurer, in amounts to be set out in a letter of direction, disburse the preliminary compensation funds to Marquette to pay off the mortgage it held on the subject property, pay N&L for attorney fees and costs, and distribute funds to Ashton and Petey's. The petition to withdraw was verified by Kattos and representatives of Ashton and Petey's.

¶ 36   The record also contains the letter of direction sent to the county treasurer, directing the disbursement of the preliminary compensation funds. The disbursement letter was sent by N&L in its capacity as then-counsel for Kattos, GreatBanc, Ashton, and Petey's. In the letter,

N&L requested that the county treasurer disburse the funds "[p]ursuant to the instructions of our clients, [Kattos, GreatBanc, Ashton, and Petey's]." These instructions included requests that $318,100.56 plus any *per diem* be disbursed to Marquette pursuant to its mortgage payoff letter and $284,067.95 be disbursed to N&L for attorney fees and costs. The remainder of the withdrawn preliminary compensation funds were disbursed to Ashton and Petey's.

¶ 37    There is nothing in the record that suggests that N&L requested the withdrawal of the preliminary compensation funds or participated in the ultimate determination of how the funds were to be disbursed. Rather, everything in the record indicates that Kattos, GreatBanc, Ashton, and Petey's alone sought to withdraw the preliminary compensation funds for their own benefit—namely, to pay off the debts owed to Marquette and N&L with the remainder of the funds to be retained by Ashton and Petey's. Although they requested that some of the funds be disbursed directly to Marquette and N&L, it does not change our opinion that the funds were ultimately withdrawn by and used for the sole benefit of Kattos, GreatBanc, Ashton, and Petey's. It appears that the purpose of having the funds directly disbursed to Marquette and N&L was simply to eliminate the intermediate step of depositing the funds in the accounts of Kattos, GreatBanc, Ashton, and Petey's and then making subsequent payments to Marquette and N&L. We see nothing in the record that persuades us that N&L participated in the withdrawal of the preliminary compensation funds other than in its representative capacity as then-counsel for Kattos, GreatBanc, Ashton, and Petey's.

¶ 38    Because we conclude that N&L was not a party with an interest in the subject property and did not withdraw any of the preliminary compensation funds, but instead that the funds were all withdrawn by Kattos, GreatBanc, Ashton, and Petey's—parties that had an interest in the subject property—IDOT's contention that the trial court erred in allowing N&L to withdraw preliminary compensation funds is without merit.

¶ 39    This brings us to IDOT's contention that the trial court erred in not requiring N&L to participate in the refund of the excess preliminary compensation funds. As discussed above, the Act requires that the withdrawal of preliminary compensation funds be conditioned on the refund of any withdrawn funds that exceed a subsequent determination of final just compensation. *Id.* Once a determination of final just compensation is made, the trial court is required to order the necessary refunds *by the interested parties who withdrew the funds*, and if the refunds are not made in a timely fashion, the trial court must enter an order against the delinquent withdrawing parties. *Id.* § 20-5-35. Nowhere in the Act is there a requirement that any ultimate recipient of preliminary compensation funds—regardless of whether they withdrew the funds or simply received them from a withdrawing party—must participate in the refund of excess preliminary compensation funds.

¶ 40    For the reasons discussed above, we have concluded that N&L is not a withdrawing party. As a result, because the Act provides that the *withdrawing parties* refund the excess preliminary compensation, we also conclude that the Act does not require N&L to participate in the refund of the excess preliminary compensation funds. That obligation belonged to the withdrawing parties—Kattos, GreatBanc, Ashton, and Petey's.

¶ 41    IDOT argues that because the trial court ordered the disbursement of some of the preliminary compensation funds directly to N&L, the law firm was necessarily a withdrawing party. We disagree. According to IDOT, the identity of the withdrawing party cannot be made solely based on who filed the petition to withdraw because that would require a petitioning party to participate in a refund even if it did not receive any of the funds, while permitting a

party who received funds to escape the refund obligation simply because it did not file the petition.

¶ 42    Although we disagree that the simple receipt of preliminary compensation funds renders an entity a withdrawing party, we do not suggest that the mere filing of the petition is a definitive determination of who the withdrawing party is. First, as mentioned, there is nothing in the language of the Act that equates a withdrawing party with whoever ultimately receives some of the preliminary compensation funds, no matter how far removed. Second, although the fact that Kattos, GreatBanc, Ashton, and Petey's filed the petition to withdraw was a factor in our conclusion that they were the withdrawing parties, it was far from the only, or even the most persuasive, factor. Rather, particularly convincing was the fact that the preliminary compensation funds paid to N&L were paid *on behalf of* Kattos, GreatBanc, Ashton, and Petey's as compensation for attorney fees and costs owing to N&L. In other words, although the funds were *disbursed* directly to N&L, the disbursement was made for the benefit of Kattos, GreatBanc, Ashton, and Petey's. Again, other than eliminating the unnecessary step of depositing the preliminary compensation funds in an account belonging to Kattos, GreatBanc, Ashton, and Petey's, we see no difference between what happened here and the withdrawing parties using the withdrawn preliminary compensation funds to personally write the checks to pay their debts to N&L or other creditors. IDOT makes no contention that, in such a circumstance, N&L and the other creditors would be required to participate in the refund of excess preliminary compensation funds. Requiring any recipient of preliminary compensation funds to participate in the refund of excess funds would lead to absurd results, as it would create a line-drawing issue: how far removed from the initial withdrawal of the preliminary compensation funds may a fund recipient be held responsible for the refund? Must they be paid directly by the withdrawing party, or is it sufficient if they simply receive some of the funds after they have been passed between multiple entities as part of separate and distinct arms-length transactions completely unrelated to the subject property? We hardly think that such a result was intended by the language of the Act; instead, we believe that in circumstances such as are present in this case, the withdrawing party is the party with the interest in the subject property for whose benefit the withdrawn preliminary compensation is used. See *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 44 (2007) ("In interpreting a statute, we also must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results.").

¶ 43    Because, under the circumstances present here, N&L was not a withdrawing party, it was not required to participate in the refund of the excess preliminary compensation funds, and the trial court did not err in relieving N&L from the obligation to participate in the refund.

¶ 44    Since the filing of our initial opinion in this appeal, IDOT filed a petition for rehearing with respect to our determination that the trial court did not err in not requiring N&L to participate in the refund of the excess preliminary compensation funds because N&L was not a withdrawing party. Although we have denied IDOT's petition for rehearing, we pause to comment on some of IDOT's contentions. Most of IDOT's arguments are simple restatements of the arguments raised in its briefs on appeal, such as that only parties with an interest in the property are permitted to withdraw preliminary compensation funds and that N&L's name on the distribution order proves that it was a withdrawing party. Our analysis above addresses these contentions, and we see no need to repeat ourselves.

¶ 45    We do, however, wish to comment on IDOT's contention that by not requiring N&L to participate in the refund of the excess compensation, we and the trial court have (1) ignored authority that withdrawing parties must participate in the refund of excess compensation, (2) rewritten the statute to allow law firms and other creditors to make withdrawals from preliminary compensation funds, and (3) ignored the fact that IDOT is entitled to reimbursement. First, we have not ignored the requirement that withdrawing parties must participate in the refund of excess compensation. In fact, we specifically discuss and uphold that requirement in our above analysis. N&L, however, is not a withdrawing party for all the reasons discussed above and, thus, is not subject to that requirement. Second, we have not rewritten the statute. At no point in our decision have we suggested that anyone other than parties with an interest in the property may seek withdrawal of preliminary compensation funds. Once again, we point out that our conclusion is that N&L was not a withdrawing party, not that N&L, as a creditor of an interested party, was entitled to make withdrawals.

¶ 46    Finally, and most importantly, IDOT's perception that it will have to forfeit recovery of the excess refund distributed to N&L is incorrect. To state our holding in the simplest of terms: N&L was not a withdrawing party. Therefore, N&L is not required to participate in the refund. Kattos, GreatBanc, Ashton, and Petey's were the withdrawing parties. Accordingly, Kattos, GreatBanc, Ashton, and Petey's are the parties that are obligated to refund the entirety of the excess compensation. In other words, IDOT seeks to recover the remaining excess compensation from the wrong entity; but it is not our holding that IDOT cannot recover at all. It is unclear to us how IDOT reached the conclusion that it must recover from N&L or not recover at all; however, that is not the import of our holding.

¶ 47                    3. Denial of Leave to Conduct Discovery and File Response

¶ 48    IDOT also argues that the trial court erred in denying IDOT leave to conduct discovery on and file a written response to N&L's petition to vacate. We review the trial court's decision in this respect for an abuse of discretion. See *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 441 (2010) (applying an abuse-of-discretion standard of review to the question of whether the trial court erred in denying a party leave to file an untimely response to a motion); *People ex rel. Department of Transportation v. Firstar Illinois*, 365 Ill. App. 3d 936, 942 (2006) ("The trial court has power over the conduct of discovery, and its decision will not be disturbed on appeal absent an abuse of discretion.").

¶ 49    Although the record reflects that IDOT orally requested leave to file a written response to the petition to vacate, the record also reflects that counsel for IDOT made only a single, vague, oral, quasi-request regarding conducting discovery, simply stating, "I also hate to say the word, but discovery may be also out there as well." There was no indication on what issue IDOT felt discovery was necessary, why it was necessary, or even if it ultimately was necessary or just possibly necessary. On appeal, IDOT contends that the fee agreement between Kattos, Ashton, and Petey's and N&L did not establish that N&L was owed fees at the time of the withdrawal and that N&L did not possess a lien for their fees at the time. According to IDOT, had it known this information, it could have recovered the full amount of the excess preliminary compensation "many years ago." Although unclear, we presume that IDOT is somehow attempting to argue that discovery would have produced this information. It is even more unclear to us, however, how the trial court's denial of IDOT's request for discovery could have allowed IDOT to recover the excess preliminary compensation funds "many years ago" when

the determination that there were excess preliminary compensation funds was only made at the end of April 2017, mere weeks before the trial court denied IDOT discovery in May 2017. Moreover, as discussed below, whether N&L had a legally enforceable claim for fees is irrelevant to the determination of whether N&L was required to participate in the refund. Because IDOT failed to make a definitive request for specific discovery or offer an explanation of its necessity, and because IDOT on appeal fails to offer a plausible claim of prejudice resulting from the denial of the request for discovery, we cannot say that the trial court abused its discretion in denying the request.

¶ 50    With respect to IDOT's request to file a written response to N&L's petition to vacate, IDOT's argument on appeal focuses on its contention that N&L was not legally entitled to recover attorney fees and costs at the time of withdrawal. According to IDOT, given the opportunity to file a written response to N&L's petition to vacate, it could have advised the trial court of this information. Whether N&L had a legally enforceable claim to attorney fees and costs at the time of the withdrawal of the preliminary compensation, however, is irrelevant to the question of whether N&L was required to participate in the refund of excess preliminary compensation funds. N&L's primary argument in its petition to vacate—and the trial court's basis for granting the petition to vacate—was that the trial court lacked jurisdiction over N&L because N&L was not a party to the proceeding. Whether N&L had a legally enforceable claim against Kattos, Ashton, and Petey's had no bearing on that question whatsoever, and thus is irrelevant to the question. See Ill. R. Evid. 401 (eff. Jan. 1, 2011) (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Likewise, our basis for affirming the trial court's granting of the petition to vacate the final judgment order as to N&L—that N&L was not a withdrawing party—is unaffected by a determination that N&L did not have a legally enforceable claim for attorney fees and costs against Kattos, Ashton, and Petey's. IDOT certainly cites no authority that a withdrawing party—here Kattos, Ashton, and Petey's—may only use preliminary compensation funds to pay legally enforceable debts. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research."). To the extent that Kattos, Ashton, and Petey's might have paid money to N&L that they did not owe, that is an issue to be resolved between them and N&L in separate litigation. Because the contentions that IDOT claims it would have included in a written response have no bearing on the issue that was before the trial court, IDOT was not prejudiced by the trial court's denial of its request to file a written response and any error in the trial court's denial is not reversible. See *In re Carthen*, 66 Ill. App. 3d 780, 785 (1978) ("Generally, error is not reversible without a showing of prejudice.").

¶ 51                                    B. Appeal No. 1-18-2310
¶ 52                                          1. Jurisdiction
¶ 53        In appeal No. 1-18-2310, Kattos argues that the trial court erred in awarding IDOT prejudgment interest on the preliminary compensation refund prior to a determination of the precise amounts owed by each of the refunding parties. In its cross-appeal in No. 1-18-2310, IDOT argues that the trial court incorrectly held that a pending appeal deprived it of jurisdiction to determine who was responsible for refunding the portion of preliminary compensation funds received by N&L.

¶ 54        When we initially issued our decision in this appeal, we held that we lacked jurisdiction over both Kattos's appeal and IDOT's cross-appeal in No. 1-18-2310 because a petition for attorney fees filed by Kattos, Ashton, and Petey's remained pending in the trial court and the October 24, 2018, order did not contain the necessary Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding. Since then, however, the parties filed petitions for rehearing on this matter. In his petition, Kattos argues that the notices of appeal are now effective under Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) because the petition for attorney fees was subsequently resolved. IDOT, on the other hand, argued that our conclusion that we lacked jurisdiction was incorrect because petitions for attorney fees are collateral to final judgments and thus have no effect on jurisdiction, and because our finding of no jurisdiction in appeal No. 1-18-2310 was inconsistent with our findings of jurisdiction in appeal No. 1-17-1393 and in *People ex rel. Department of Transportation v. GreatBanc Trust Co.*, 2018 IL App (1st) 171315 (*GreatBanc I*).

¶ 55        We agree with Kattos that the resolution of the pending attorney fees petition removed the impediment to our jurisdiction and rendered the previously filed notices of appeal effective. Under Rule 303(a)(2), a notice of appeal filed before the resolution of any separate claim becomes effective upon resolution of that pending claim. Accordingly, once Kattos's fee petition was resolved, his and IDOT's notices of appeal became effective and we obtained jurisdiction. Therefore, we may now address the merits of Kattos's appeal and IDOT's cross-appeal.

¶ 56        Before doing so, however, we pause to briefly address IDOT's contention that our initial decision was inconsistent with appeal No. 1-17-1393 and *GreatBanc I*. According to IDOT, because we found jurisdiction in appeal No. 1-17-1393 and *GreatBanc I*, we were required to find jurisdiction in appeal No. 1-18-2310 and to do otherwise was inconsistent. IDOT, however, fails to recognize that the order appealed from in appeal No. 1-17-1393 and *GreatBanc I* was the April 27, 2017, order, while the order appealed from in this appeal, appeal No. 1-18-2310, is the October 24, 2018, order. Unlike the October 24, 2018, order, the April 27, 2017, order contained a Rule 304(a) finding, which permitted an immediate appeal from that order despite the pendency of Kattos's petition for attorney fees. Because of that Rule 304(a) finding, we had jurisdiction in appeal No. 1-17-1393 and *GreatBanc I*, while the lack of a Rule 304(a) finding in this appeal precluded our jurisdiction while the fee petition remained pending.

¶ 57        Despite IDOT's contentions to the contrary, in neither appeal No. 1-17-1393 nor *GreatBanc I* did we state or imply that the Rule 304(a) finding in the April 27, 2017, order was unnecessary. In both appeals, we specifically noted the inclusion of the Rule 304(a) finding in the order. In *GreatBanc I*, further discussion of jurisdiction was unnecessary because jurisdiction was apparent and uncontested. In appeal No. 1-17-1393, we included a discussion

of jurisdiction and explicitly stated that the Rule 304(a) finding in the order eliminated any concerns that pending matters would affect jurisdiction. Thus, it is unclear on what IDOT bases its contention that we held that the Rule 304(a) finding was unnecessary in *GreatBanc I* and appeal No. 1-17-1393. In no way are our decisions in the litigation between the parties inconsistent with one another. The pending attorney fees petition made a Rule 304(a) finding necessary. The April 27, 2017, order contained a Rule 304(a) finding, while the October 24, 2018, order did not. Accordingly, we had jurisdiction over the appeals from the April 27, 2017, order but did not over the appeal from the October 24, 2018, order.

¶ 58                                    2. Kattos's Appeal

¶ 59        Kattos argues on appeal that the trial court erred in awarding IDOT prejudgment interest for the period between the final judgment order entered on April 27, 2017, and the entry of the October 24, 2018, order. According to Kattos, prejudgment interest during this period was inappropriate because the amount of refund owed by each party was not determined until the October 24, 2018, order. We agree in part.

¶ 60        Before getting to the substance of Kattos's appeal, however, me must first dispose of IDOT's contention that we lack jurisdiction to review this claim because Kattos lacks standing to bring this appeal. According to IDOT, because it was Ashton and Petey's and not Kattos that were ordered to participate in the refund of the excess compensation, Kattos lacked standing. Although it is true that, technically, Ashton and Petey's should have initiated this appeal, we do not find any deficiency in the proper naming of the appellant to warrant dismissal.

¶ 61        " 'Illinois courts have repeatedly refused to dismiss an appeal because of a technical deficiency in the notice of appeal so long as the notice fulfills its basic purpose of informing the victorious party that the loser desires a review of the matter by a higher court.' " *In re Estate of Weeks*, 409 Ill. App. 3d 1101, 1108-09 (2011) (quoting *In re Estate of Weber*, 59 Ill. App. 3d 274, 276 (1978)). As mentioned above, Kattos is part owner of Ashton and Petey's. Throughout this litigation, Kattos, Ashton, and Petey's have been represented by the same counsel, and the parties have consistently treated Kattos, Ashton, and Petey's as a single unit with aligned interests. The naming of Kattos as the appellant on the issue of interest did not deprive IDOT of the notice to which it was entitled, and IDOT makes no contention that the identification of Kattos rather than Ashton and Petey's caused it any prejudice whatsoever. Nor do we see how any prejudice could result, as the merits of the interest issue are unaffected by whether the claim is made by Kattos or by Ashton and Petey's. Accordingly, we reject IDOT's contention that we lack jurisdiction over this appeal. See *id.* at 1109 ("Petitioners' failure to name themselves as appellants in the notice of appeal, while technically deficient, did not deprive intervenor of the notice to which she was entitled. Intervenor does not allege she was prejudiced in any way by petitioners' naming the estate rather than themselves as appellants.").

¶ 62        Turning now to the substance of Kattos's appeal, section 2-1303(a) of the Code of Civil Procedure provides for pre- and post-judgment interest in relevant part as follows:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made

- 16 -

or rendered to the time of entering judgment upon the same, and included in the judgment." 735 ILCS 5/2-1303(a) (West 2016).

This provision applies in the context of eminent domain proceedings. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 297 (1993). In such a case, it is unnecessary that judgment be entered before interest may begin to accrue. *Id.* at 299. Rather, under section 3-1303, "prejudgment" interest begins to accrue on the date on which the withdrawing parties' obligation to refund excess preliminary compensation arises, *i.e.*, when just compensation is determined to be less than the preliminary compensation and the withdrawing parties are directed to refund the excess. *Id.* The interest that accrues after the award until the entry of judgment is to be included in the amount of the judgment entered. *Id.* at 300. Following the entry of judgment, "postjudgment" interest continues to accrue on the judgment amount until the debtor tenders full payment, including any accrued interest. *Id.* at 301.

¶ 63        Kattos's argument on appeal is that interest could not begin to accrue in this case until the October 24, 2018, order because, until then, no determination was made as to the specific amount of the refund each party owed. Kattos points out that although the April 27, 2017, order directed repayment of the excess compensation by Ashton, Petey's, N&L, and Marquette, according to their *pro rata* share, both N&L and Marquette were later released from their refund obligations, and no ultimate determination has ever been made as to who is responsible for refunding N&L's share of the excess compensation. Kattos argues that because of this, it was impossible for it to halt the accrual of interest on Ashton's and Petey's shares of the refund by tendering the amount owed.

¶ 64        Kattos is correct that an award of interest requires that the amount of money owed to be certain. *Kramer v. Mt. Carmel Shelter Care Facility, Inc.*, 322 Ill. App. 3d 389, 392-93 (2001). That being said, however, we disagree with Kattos that there was no determination of a certain amount owed by Ashton and Petey's prior to October 24, 2018. In the April 27, 2017, order, the trial court ordered Ashton, Petey's, Marquette, and N&L to each refund their *pro rata* shares of the excess compensation. Although the trial court did not do the math for the parties, their *pro rata* shares were, in fact, specific amounts. All Kattos had to do was multiply the total refund amount ($1,582,000) by Ashton's and Petey's respective shares of the preliminary compensation received (42.3% by Ashton and 38.2% by Petey's) to arrive at the specific dollar amounts owed by Ashton and Petey's. When this simple math is performed, it is apparent that Ashton was to repay $669,186 and Petey's $604,324 for a combined total of $1,273,510. There is nothing vague or uncertain about these amounts, and Kattos's unwillingness to perform the calculations does not render them so. Moreover, although the trial court subsequently relieved Marquette and N&L of any obligation to participate in the refund of the excess compensation, Kattos, Ashton, and Petey's never disputed any portion of $1,273,510 Ashton and Petey's were ordered to pay in the April 27, 2017, order. Nor did the release of Marquette or N&L alter the fact that Ashton and Petey's were responsible for at least $1,273,510. Accordingly, the fact that Ashton and Petey's had to pay $1,273,510 of the excess compensation was certain and definite as of April 27, 2017, and the trial court did not err in awarding interest on $1,273,510 starting on April 27, 2017. Certainly, Kattos, Ashton, and Petey's could have halted the accrual of interest on that portion of the award by paying it in full. See *id.* at 393, 396 (where a portion of the judgment was later reduced, interest accrued on the remaining portion of the judgment from the date it was originally entered because the debtor could have halted the accrual of

interest by payment of the full amount or by simply subtracting the reversed amount with corresponding interest); see also *Shackelford v. Allstate Fire & Casualty Insurance Co.*, 2017 IL App (1st) 162607, ¶ 16 (an arbitration award of $16,000 that was subject to " 'all applicable set-offs and liens to be resolved by the Parties and their Attorneys' " was not so indefinite that interest under section 2-1303 could not accrue on the balance from the date of the award).

¶ 65    Although we conclude that the trial court did not err in determining that interest began to accrue as of April 27, 2017, on the initial $1,273,510, Ashton and Petey's were ordered to pay, on October 24, 2018, the trial court increased the amount of the excess compensation that Ashton and Petey's were required to pay to $1,297,932.05. Despite not ordering Ashton and Petey's to pay this increased amount until October 24, 2018, the trial court determined that interest began accruing on the increased amount as of April 27, 2017. This was error.

¶ 66    Where an award or judgment on which interest has already begun to accrue is subsequently increased, interest on the increased amount begins only as of the day that the increase is awarded. See *Owens v. Stokoe*, 170 Ill. App. 3d 179, 183 (1988) (where the original judgment against the debtor was $10,000 but was increased to $40,000 on appeal, interest on the additional $30,000 did not begin to accrue until the appellate court's decision, even though interest on the original $10,000 began to accrue as of the jury's verdict); *Toro Petroleum Corp. v. Newell*, 33 Ill. App. 3d 223, (1974) (where the amount of the judgment was increased on appeal, interest began to accrue on the original amount from the date of the original judgment and interest accrued on the increased amount from the date of the appellate court's decision). This is because a judgment debtor cannot be expected to pay—and thereby halt interest on— an amount that it has not yet been ordered to pay. *Owens*, 170 Ill. App. 3d at 183. Here, prior to October 24, 2018, Ashton and Petey's could not be expected to pay the additional $24,422.05 the trial court ordered them to contribute to the excess compensation refund because they had not yet been ordered to pay it. Accordingly, because Ashton and Petey's did not have the opportunity to halt the accrual of interest on the increased amount until October 24, 2018, it was improper for the trial court to allow interest to accrue on that amount beginning on April 27, 2017. Therefore, although the trial court properly concluded that interest on the initial $1,273,510 began to accrue on April 27, 2017, interest on the additional $24,422.05 did not begin to accrue until October 24, 2018.

¶ 67    Kattos points out that the allocation of N&L's previous share of the excess compensation remains unresolved, suggesting that this fact somehow renders the other amounts owed by Ashton and Petey's indefinite or uncertain. Kattos, however, does not explain how this is so. As explained above, the amount owed by Ashton and Petey's as of April 27, 2017, was easily ascertainable through simple calculations, and the October 24, 2018, order explicitly stated the amount to be paid by Ashton and Petey's. Kattos makes no contention that resolution of the outstanding excess compensation that was once allocated to N&L will reduce the amount owed by Ashton and Petey's. At most, if Ashton and Petey's are eventually required to refund the remainder of the excess compensation, it will simply increase the amount owed by them. As discussed above, however, subsequent increases in the amount owed by a judgment debtor do not accrue interest until those additional amounts are actually awarded. Accordingly, any allocation of the remaining excess compensation does not alter the amount currently owed by Ashton and Petey's.

¶ 68    Kattos also argues that the Illinois Supreme Court's decision in *Department of Transportation v. New Century Engineering & Development Corp.*, 97 Ill. 2d 343 (1983),

stands for the proposition that interest could not begin to accrue until the entry of an order allocating responsibility for refunding the excess compensation and that, here, the allocation of the refund was not certain until the October 24, 2018, order. As discussed above, we disagree that there was any uncertainty in the April 27, 2017, order. That order plainly allocated the entirety of the excess compensation in *pro rata* shares, which were easily determined through basic math. Although uncertainty later arose over Marquette's and N&L's participation in the refund, at no point was there any dispute or uncertainty as to the amounts the trial court ordered Ashton and Petey's to refund.

¶ 69        Our determination that interest on the initial $1,273,510 began to accrue on April 27, 2017, while interest on the subsequent $24,422.05 did not begin to accrue until October 24, 2018, protects the respective parties while serving the purposes of section 2-1303. As of April 27, 2017, it was determined that Ashton and Petey's wrongfully held $1,273,510, and thus, IDOT was entitled to be made whole by depriving Ashton and Petey's of the unfair use of that money, which actually belonged to IDOT. See *Kramer*, 322 Ill. App. 3d at 393 ("The rationale behind section 2-1303 of the Code is to make the judgment creditor whole by requiring the judgment debtor to give up the use of the money, thereby allowing the judgment creditor to use the funds to earn interest if he chooses to do so while the matter is pending. [Citation.] It is simply not fair to allow the judgment debtor to continue to use the money that is rightfully the plaintiffs'."). At the same time, the interests of Ashton and Petey's are protected because they could have paid this initial amount at any time after April 27, 2017, and such payment would have stopped the further accrual of interest on that amount. In addition, because Ashton and Petey's did not have the opportunity to pay the additional $24,422.50 prior to October 24, 2018, our decision protects them from paying an unfair amount of interest.

¶ 70        In sum, we conclude that the trial court did not err in awarding interest on the initial $1,273,510 beginning on April 27, 2017, but did err in awarding interest on the additional $24,422.05 beginning on April 27, 2017. Rather, interest on the additional $24,422.05 should not have begun to accrue until October 24, 2018. Accordingly, we reverse the trial court's judgment in that respect and remand for the trial court to recalculate the interest owed by Ashton and Petey's in accordance with this decision.

¶ 71                          3. IDOT's Cross-Appeal

¶ 72        In its cross-appeal, IDOT argues that the trial court incorrectly held that IDOT's pending appeal in appeal No. 1-17-1393 deprived it of jurisdiction to determine who was responsible for refunding the portion of preliminary compensation funds received by N&L. We conclude that IDOT's cross-appeal has been rendered moot by our resolution of appeal No. 1-17-1393.

¶ 73        "An appeal is moot if no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005). In the October 24, 2018, order, the trial court concluded that it lacked jurisdiction over the excess preliminary compensation funds previously allocated to N&L because IDOT's appeal No. 1-17-1393, which focused on whether N&L was required to participate in the refund of the excess preliminary compensation funds, was pending. We have now resolved appeal No. 1-17-1393 as discussed above. Thus, regardless of whether the trial court was correct in its conclusion, there is no relief we can afford IDOT in this respect because any impediment to the trial court's jurisdiction created by the pendency of appeal No. 1-17-1393 has now been removed. Accordingly, IDOT's cross-

appeal is moot.

¶ 74                                    III. CONCLUSION

¶ 75        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in appeal No. 1-17-1393, and appeal No. 1-18-2310 is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 76        No. 1-17-1393, Affirmed.

¶ 77        No. 1-18-2310, Affirmed in part, reversed in part, and remanded.